# CHARLESTON.

CROSSLAND. *v.* CROSSLAND.

Submitted September 10, 1902.     Decided April 4, 1903.

1. PROPERTY—*Sale—Injunction.*

V. C., administrator of the estate of P. C. J., filed her bill in the circuit court of T. County, Nov. 4, 1901, against G. T. C., late husband of P. J. C., in possession of the personal property on the real estate held by him by the curtesy, a part of which personal property defendant admitted the administrator was entitled to, but a part of which he claimed the title to, himself; praying that defendant be restrained and enjoined from interfering with plaintiff in making sale of said property on the home premises, and that the writ of injunction be served on the morning of the day of sale, November 16, 1901, by the sheriff of T. County, or his deputies and that he be directed in said injunction to prevent by restraint and arrest the said G. T. C. from violating such inhibition and injunction; and further praying that she also have the protection of the said sheriff to the auctioneer and to the people who might attend the said sale to bid on said property and in pursuance of said sale to make removal of any property that they might purchase. *Held:* Error to grant the injunction "as prayed for in the bill," as it appeared from the bill itself that the title to the property sought be sold was in question. (p. 109).

Appeal from Circuit Court, Tucker County.

Bill by Victoria Crossland against George T. Crossland. Decree for plaintiff, and defendant appeals.

*Dismissed.*

C. O. STRIEBY, for appellant.

CUNNINGHAM & STALLINGS, for appellee.

MCWHORTER, PRESIDENT.

Provy J. Crossland died on the first of February, 1901, leaving a husband, George T. Crossland, and nine children, and leaving some personal property, as well as real estate, all of which she disposed of by will. On the 29th day of Auguse, 1901, America Victoria Crossland, one of the heirs, was appointed and qualified as administrator. The said George Crossland claimed a part of the personal property as his own and objected to the appraisers appraising such parts of the property as he claimed to own individually, and objected to the sale thereof by the administrator; and on the 28th day of October, 1901, the said George T. Crossland gave the administrator the followng notice in writing: "To Victoria Crossland, administrator of Provy J. Crossland, deceased: You are hereby notified to come and take into your possession all of the personal estate of the said Provy J. Crossland, deceased, and to immediately remove the same from my premises, which said premises I now occupy as my home, and wherein I hold a life estate by virtue of being the husband of the said Provy J. Crossland, deceased. You are further notified that the major part of the property you have advertised for sale as such administratrix is my individual property, the possession and ownership whereof I have always heretofore enjoyed without having the title thereto called into question, and which I shall under no circumstances suffer you to sell or dispose of. You are further notified that I will not permit you to make sale of any property upon the said premises on the 16th day of November, 1901, and in case you should attempt the same you will be treated as a tresspasser and shall be dealt with in relation thereto according to law. Given under my hand this the 28th day of October, A. D. 1901. George T. Crossland."

On the 4th day of November, 1901, Virginia Crossland, the administrator, presented her bill against George T. Crossland, closing with the following prayer:

"The plaintiff therefore prays that the said George T. Crossland be restrained, inhibited and enjoined from interfering with her in making sale of said property on the home premises aforesaid, and that the writ of injunction be served on the morning of the day of said sale by the sheriff of said Tucker county or his deputies, and that he be directed in said injunction to prevent by restraint and arrest the said George T. Crossland from vio-

lating such inhibition and injunction; she further prays that she also have the protection of the said sheriff to the auctioneer and to the people who may attend said sale to bid on said property and in pursuance of said sale to make removal of any property they may purchase, or any of them, and to carry out this sale, she prays that the said Crossland may be inhibited and restrained by said injunction by the sheriff present, and that afterwards in case of any violation of the injunction the said Crossland be dealt with in relation thereto according to law. And she further prays that she may have such other, both special and general relief, to which she may be entitled, and that in the end such injunction and inhibition be made perpetual. And she will ever pray." Upon which bill the judge awarded an injunction "as prayed for." The bill alleges that the defendant, as plaintiff was informed, had refused to renounce the will as to his curtesy in the real estate; but under the will took possession of the two horses that were left to him by the deceased; that after the death of plaintiff's mother, the testator, plaintiff went to their home in Canaan Valley, in Tucker county and there attempted to preserve and take care of the property of which her mother had died possessed, and to care for her two younger brothers, but after a long stay of five or six months her father, the defendant made it so unpleasant for her and her sister, Samantha, who was assisting her in taking care of the property and family, that finally she concluded to administer and sell the property and disburse the proceeds according to the will, and as provided by law; that after her appointment as administrator, the defendant became much more abusive and vindictive towards her and all of her brothers and sisters; that within the then last week she and her sisters were compelled to go away from home; that on the 17th day of October, the date of the appraisal, defendant obstructed, interfered and denied her right of having said property appraised; that it was finelly done after great difficulty and embarrassment to the appraisers as well as to herself, and all the parties concerned. Plaintiff charges defendant with being very excentric, having a terrible temper and absolutely irreconcilable when he "takes a notion" and charges him with being of intemperate habits to a considerable extent, and when drinking was very violent; that if the estate was not permitted to be administered he would take possession of it and in a very short

time it would be entirely dissipated, destroyed and otherwise misappropriated; that defendant was obstructing and hindering her in the course of her administration of said estate by threatening violence and had given her written notice that she should not sell the property on the premises and ordered her to immediately remove it; but claimed much of the property as his own; and files as an exhibit with her bill the written notice which is copied above; that she had advertised the property for sale on the 16th of November, but believed she would be prevented from making the sale at that date, through the conduct of the defendant, without the interference of a court of equity; alleging that the property advertised for sale belonged to the estate of the decedent and filed certain affidavits of several of her sisters and brothers setting forth that fact; that all of the heirs that were present were urging her to make sale of the property and would, if she did not administer on it, hold her responsible on her bond; that she had been unable to administer on said estate through fear of personal and bodily injury not only to herself but of others who attempt to purchase or remove any of said property; that defendant would undertake to do violence and in all probability excite, at said sale, riot, and bloodshed; that she had been advised that under these circumstances a court of equity would aid and assist her by prohibiting, restraining and enjoining said defendant from interfering; that in connection with this "she charges that the said defendant is not financially *liable* for any of the estate that he may dissipate and misappropriate, for he owns nothing except a half undivided interest in said twenty-five and three-fourth acres of land, the whole of which is valued at about $150.00 and the two horses aforesaid, and possibly some other trinkets of property which does not amount in value to over $100.00 to $150.00." After expressing the reluctance she had in pursuing this course against her father, follows the very remarkable prayer to the said bill. Although this injunction was granted on the 4th day of November, 1901, the request contained in the prayer, that the injunction should be served on the morning of the day of the sale, was followed to the letter and served at the time indicated. On the same day the defendant gave notice, in writing, of a motion to dissolve the injunction on the 21st of November. The defendant field his answer, in which he denies all material allegations of the bill and setting

up his claim to the title of the property advertised to be sold and prays the dissolution of the injunction and that he be reinstated in his rights, and that his property which was sacrificed by the sale made by plaintiff on the 16th of November, under his own eyes, be restored to him, or that he be redressed in a legal manner for the conversion thereof; and filed affidavits in support of his answer; and to which answer there does not appear to have been a replication. The cause came on to be heard on the 27th of November, when the following decretal order was entered: "This cause came on this day to be heard upon the motion of the defendant to dissolve the injunction heretofore awarded herein in vacation, upon the answer and affidavits filed therewith in support thereof to the bill of the plaintiff, and affidavits filed therewith in support thereof, also which bill be filed at November Rules, 1901, and which motion to dissolve the said injunction the plaintiff resisted, and was argued by counsel. And upon consideration of said motion, the Court is of opinion that the same should be and is hereby overruled; and this cause is ordered to be matured at Rules." From which order the defendant appealed and says: "It was error for the court to have awarded the said injunction for the allegations of plaintiff's bill are not subjects of equity interference, and "That the court erred in refusing to dissolve the said injunction, because (a) the bill was not sufficient in law, (b) after the extravagant allegations of said bill were wholly denied, in unambigious terms, with no proof to sustain such allegations, it was the duty of the circuit court to have dissolved the said injunction." And also that the proceedings were in many other respects uncertain, informal, illegal and erroneous.

It clearly appears as well from the bill, as from the answer, that the title to much of the property, advertised to be sold, was in question and it also appears from the prayer of the bill, that the purpose was to use the process of the court to enable the administrator to make sale of the property without first settling the title thereto. "Where the object of the suit is a perpetual injunction and there is a controversy as to the legal rights of the parties the relief will be denied until the right is established by law." 10 Am. & E. E. L. 799 (1st Ed.), and cases there cited. In Spelling on Injunctions and other Extraordinary Remedies, sec. 180, it is said: "Although many cases appear to

have deviated from the principle, yet it is the well-established policy and rule of courts of equity to refrain from interfering in controverted questions involving titles, which may be settled in a legal forum. The inadequacy of legal remedies to afford protection is the principal ground of jurisdiction in all questions pertaining to real estate, and in matters involving the title." And sec. 181, "'A court of law is the proper tribunal to investigate a legal title and a court of equity will only interfere to protect an equitable against a strictly legal title or compel a discovery to protect a legal title. * * * But ordinarily the injunction will be refused against a defendant in possession, claiming title until the title is established by law." And cases there cited. And in sec. 333, under heading "Title in Dispute" "In these as in other cases, courts of equity will refuse to assume jurisdiction to try and determine legal questions which are controverted." *Roath* v. *Driscoll,* 20 Conn. 533; *Prentiss* v. *Larward,* 11 Vt. 135.

The bill is somewhat inconsistent with itself. One allegation is that if the estate is not permitted to be administered upon, that the defendant would take possession of it and in a short time would dissipate, destroy and otherwise misappropriate the same, clearly inferring that the defendant was not then in possession. Another allegation is, that the defendant, if permitted to remain in possession and control of said personal property, he would dispose of it, dissipate and destroy and otherwise misappropriate the whole of the personal estate. We would infer from this allegation that he was already in possession of it, and that is the true state of the case; the defendant was in possession of the whole of it, but claiming title to only a part; he conceded the title to the administrator to a part of it and asked her to take possession of it, as she admits in her bill. In Spelling on Injunctions, sec 24, "Equity has no jurisdiction to interpose for the prevention of crime or to enforce moral obligations nor will it interfere for the prevention of illegal acts merely because they are illegal. * * * One reason for non-interference is a fundamental want of jurisdiction, another is the existence of an adequate remedy at law. In other words the subject matter of equity jurisdiction is the protection of civil rights and private property and not the punishment or prevention of crime or immoral acts, when not in connection with violation of private

right." In *Schoonover* v. *Bright,* 24 W. Va. 698, it is held: "An injunction will be dissolved on the hearing if the answer fully, plainly and positively denies all of the material allegations of the bill upon which the injunction was founded and there is no proof to establish said allegations." And in *Kester* v. *Alexander,* 47 W. Va. 329; (34 S. E. 819), syl. pt. 1: "When a case is heard, legally on a bill and answer (the answer denying the material allegations of the bill) and general replication exhibits, and upon a motion to dissolve an injunction, in the absence of evidence tending to prove the material allegations of the bill it is error in the court to refuse to dissolve the injunction." From the allegations and prayer of the bill it clearly appears that the object and purpose of the suit and proceeding was to wrest the possession of the property from the defendant and to hold him in arrest, if need be, until the property could be sold, without giving the defendant an opportunity to assert his rights to the title and possession of the property in a proper proceeding, and under the process of the court. The property was taken from his possession and sold immediately without the rights of the parties being settled. Defendant certainly had his right to a day in court before thus being deprived of property of which he was possessed and to which he claimed title. Section 10,, Art. 3, of our Constitution provides: "No person shall be deprived of life, liberty or property, without due process of law, and the judgment of his peers." In this case thus vital and salutary provision of our fundamntal law was clearly violated. The allegations of the bill admit that defendant claimed title to the property while the prayer was that defendant should be restrained from interfering with the sale of the same, and that he have no notice thereof until the morning of the sale, and that the sheriff be directed in said injunction to prevent by restraint and arrest the said defendant from violating such inhibition and injunction and the injunction was granted "as prayed for in the bill," and literally carried out. The sheriff figuratively speaking, held the defendant while the administrator sold the property. In *Schoonover* v. *Bright, supra,* (syl. pt. 2,) it is held: "To warrant the interference of a court of equity to restrain a trespass, two conditions must coexist; first, the plaintiff's title must be undisputed or established by legal adjudication; and second, the injury complained

of must be irreparable in its nature." *Lazzell* v. *Garlow,* 44 W. Va. 466; (30 S. E. 171.) It is not claimed under the bill, that the first condition exists, for the claim of the plaintiff to the property, as shown by the allegations of the bill, was neither undisputed nor established by legal adjudication; nor does it appear from the allegations of the bill, that the second codition is met; on the contrary the bill files as an exhibit a notice to the administrator in writing, by the defendant, served upon her "To come and take into your possession all of the personal property of the said Provy J. Crossland, deceased," and was notified in the same paper that the major part of the property, as advertised for sale by the plaintiff was claimed to be the defendant's individual property. Defendant admitted in this notice that a part of the property belonged to the estate to be administered, and expressed a willingness to give it up, and at the same time notified the plaintiff of his, defendant's rights, and to get possession of the property of the estate illegally held by defendant, if any, the plaintiff had an adequate remedy at law, and the defendant was entitled to make his defence at law and establish his title, if any he had. It is insisted by appellee that the decree in this case is not appealable and bases her contention on *Robrecht* v. *Robrecht,* 46 W. Va. 739. The case cited cannot help the plaintiff in this cause. That was an injunction merely ancillary to the relief sought; its object being to preserve the status of the property until the final disposition of the case. In this case the bill was purely a bill of injunction and was so prepared that it served its whole purpose in the mere execution of the order of injunction. In all my experience and obesrvation I must say it is the most complete self-executing legal proceeding I have ever seen. The order here appealed from comes clearly within the purview of clause VII. sec. I., ch. 135, Code. The bill has no equity and is wholly insufficient upon which to grant an injunction. The bill had no other object than to assist the administrator in making sale of the property without first settling the title to the property proposed to be sold, in the manner provided by law. The bill had accomplished its purpose and there could be no reason for directing the same to be matured at rules. The injunction was improperly awarded and should have been dissolved on motion on the bill and answer. The order of the court refusing to dissolve the injunction is reversed and this

Court proceeding to render such decree as the circuit court should have rendered, it is adjudged ordered and decreed that the injunction granted in this cause be, and the same is hereby dissolved and the bill dismissed and that the appellant recover against the appellee the costs of his appeal as well as the costs of his defense in the circuit court.

*Dismissed.*