687 S.E.2d 341 (2009)
STATE of West Virginia ex rel. LLOYD'S INC., Petitioner
v.
The Honorable Richard A. FACEMIRE, Judge of the Circuit Court of Braxton County, West Virginia, and Charles R. Lloyd, Respondents.
No. 34948.
Supreme Court of Appeals of West Virginia.
Submitted September 23, 2009.
Decided November 18, 2009.
*342 Kenneth E. Webb Jr., Esq., Bowles Rice McDavid Graff & Love LLP, Charleston, WV, for Petitioner Lloyd's Inc.
Stephen B. Farmer, Esq., Erin K. King, Esq., Farmer, Cline & Campbell, PLLC, Charleston, WV, for Respondent Charles R. Lloyd.
PER CURIAM.
Petitioner Lloyd's Inc. seeks a Writ of Prohibition preventing the enforcement of the March 27, 2009, order of the Circuit Court of Braxton County, wherein the petitioner was enjoined from transferring, dissipating and/or wasting assets. Based upon the briefs and arguments of the parties, and after a careful review of the record in this matter, we issue the writ of prohibition as moulded.

I. Factual and procedural background
This matter arose from litigation in the Circuit Court of Braxton County in a dispute among family members over ownership of real estate and operation of several lumber companies. The original plaintiff in this civil action was William G. Lloyd, who sued Braxton Lumber Co., Inc., a West Virginia corporation, Charles R. Lloyd and Charles R. Lloyd II. Braxton Lumber Co., Inc. and Charles R. Lloyd II, in turn were granted third-party plaintiff status and filed a third-party complaint against Lloyd's Inc. Trial on all issues commenced on March 27, 2007, and on April 4, 2007, the jury returned a verdict granting Charles R. Lloyd judgment in the amount of $132,000.00, as well as pre-and post-judgment interest, from and against Lloyd's Inc. This judgment was entered by the lower court on March 5, 2007. Charles R. Lloyd and William G. Lloyd filed petitions for appeal from this judgment and this Court *343 refused those petitions on December 20, 2008.
No collection action was taken while the petitions for appeal were pending in this Court. On February 17, 2009, Charles R. Lloyd filed a motion below seeking to enjoin Lloyd's Inc. from transferring, dissipating and/or wasting assets. In his motion to the circuit court, Charles R. Lloyd stated that Lloyd's Inc.'s failure to comply with the terms of the judgment order was consistent with its pattern and practice of conducting business and that he had a good faith basis to believe that Lloyd's Inc. would transfer assets in such a manner as to constitute fraudulent transfers within the definition of the West Virginia Fraudulent Transfers Act[1] (hereinafter referred to as the Act) and thereby attempt to prevent recovery on this judgment.
By order entered February 20, 2009, the circuit court below required Lloyd's Inc. to respond to the motion. The order also stated, inter alia, that "if any party desires oral argument on this motion, that party shall request the same within ten (10) days of entry of this Order." By letter dated March 2, 2009, counsel for Lloyd's Inc. requested a hearing on Charles R. Lloyd's motion. On March 6, 2009, counsel for Lloyd's Inc. filed a written response to the motion of Charles R. Lloyd. In this response, Lloyd's Inc. argued that there had been no showing on the part of Charles R. Lloyd of any transaction that would fall within the Act. As such, Lloyd's Inc. argued that the filing of the request for injunctive relief was premature.
On March 19, 2009, Charles R. Lloyd replied to the response of Lloyd's Inc., reiterating his belief that Lloyd's Inc. "will continue to refuse to comply with the Judgment Order and seek to transfer, dissipate, or waste assets, thereby attempting to prevent Charles R. Lloyd from recovering upon the judgment obtained against Lloyd's Inc." Charles R. Lloyd further stated that his motion was not intended to be a complaint under the Act. In a separate motion, Charles R. Lloyd requested appointment of a Commissioner in Aid of Execution.[2]
On March 27, 2009, and without a hearing on the underlying motion, the circuit court entered its order enjoining Lloyd's Inc. from transferring, dissipating and/or wasting assets. The order also appointed a Commissioner in Aid of Execution. The circuit court's order included the following findings and directives:
4. Charles Lloyd is not filing a complaint pursuant to the Uniform Fraudulent Transfers Act, W.V. (sic) Code § 40-1A-1, et seq., which provides a remedy for a creditor after a transfer of assets has been made by a debtor. Charles Lloyd is not asserting that Lloyd's Inc. has made a fraudulent transfer of assets. Charles Lloyd is seeking to prevent a transfer of assets that would inhibit his capacity to collect on what is a valid judgment.
5. The Court believes that enjoining Lloyd's Inc. from transferring or wasting assets is appropriate in this case, and will prevent possible further litigation. Furthermore, the Court does not believe that Lloyd's Inc. will be unduly harmed by this injunction, as the Court is only requiring that Lloyd's Inc. remain as it is, and keep it's (sic) assets where they are now.
Therefore, it is hereby ORDERED, ADJUDGED and DECREED:
1. Charles Lloyd's Motion to Enjoin Lloyd's Inc. From Transferring, Dissipating and/Or Wasting Assets shall be GRANTED.
2. The Motion to Appoint Commissioner in Aid of Execution shall be GRANTED, and attorney Thomas J. Drake of Sutton, WV shall be appointed as Commissioner to aid in execution.
*344 There was no bond required of Charles R. Lloyd in this order.
On April 13, 2009, Lloyd's Inc. presented to this Court a petition for writ of prohibition against the circuit court. Charles R. Lloyd responded to the petition on May 12, 2009. On June 3, 2009, this Court issued a rule to show cause returnable to September 23, 2009, directing the respondent to show cause why a writ of prohibition should not be granted against the circuit court.

II. Standard of review
In syllabus point four of State ex rel. Hoover v. Berger, 199 W.Va. 12, 483 S.E.2d 12 (1996), we announced the standard by which we determine whether a trial court has exceeded its jurisdiction:
In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.
With these factors in mind, we proceed to determine whether Petitioner has established the necessary grounds for the issuance of a writ of prohibition.

III. Discussion
We must first address the propriety of granting injunctive relief without the requirement of posting a bond. West Virginia Code § 53-5-9 (2008) directs that a bond must be posted prior to an injunction taking effect provides:
An injunction (except in the case of any personal representative, or other person from whom, in the opinion of the court or judge awarding the same, it may be improper to require bond) shall not take effect until bond be given in such penalty as the court or judge awarding it may direct, with condition to pay the judgment or decree (proceedings on which are enjoined) and all such costs as may be awarded against the party obtaining the injunction, and also such damages as shall be incurred or sustained by the person enjoined, in case the injunction be dissolved, and with a further condition, if a forthcoming bond has been given under such judgment or decree, to indemnify and save harmless the sureties in such forthcoming bond and their representatives against all loss or damages in consequence of such suretyship; or, if the injunction be not to proceedings on a judgment or decree, with such condition as such court or judge may prescribe. The bond shall be given before the clerk of the court in which such judgment or decree is, and in other cases before the clerk of the court in which the suit is wherein the injunction is awarded. If the bond be not given before the summons is issued, the clerk shall indorse thereon that the injunction is not to take effect until the bond is given, and the clerk who afterwards takes the bond shall indorse on the summons that it is given.
We have previously held that a bond is required for an injunction to take effect. "An order of injunction is of no legal effect under * * * [Code, 53-5-9], unless the court requires a bond, or recites in the order that no bond is required for good cause, or unless the movant is a personal representative." Syllabus Point 4, Meyers v. Washington Heights Land Co., 107 W.Va. 632, 149 S.E. 819 (1929). In the instant case, the circuit court's order is silent on the requirement that a bond be posted prior to the injunction taking effect. Therefore, while the circuit court could have waived the requirement for *345 the posting of a bond upon a showing of good cause, the circuit court's order reveals this was not done. Instead, the order is silent on the issue of a bond.
In view of the clear language of West Virginia Code § 53-5-9 and our common law, we hold that the failure of the circuit court's order to require the posting of an injunction bond, or to specifically state why an injunction bond is not required, renders the injunction void.
The fact that the injunction is void does not terminate our review of this matter, however, inasmuch as the bond requirement is merely a procedural prerequisite to the more substantive issues related to the circuit court's issuance of the injunction at question. We therefore continue our review of the underlying reason, or lack thereof, for the granting of the injunctive relief in favor of Charles R. Lloyd.
Our consideration of whether to issue a writ to prohibit enforcement of the subject injunction is guided by our decision in State ex rel Hoover v. Berger, 199 W.Va. 12, 483 S.E.2d 12 (1996), wherein we considered whether a circuit court had exceeded its legitimate powers. In Hoover we found:
In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.
With this guidance in mind, we review the circuit court's actions herein.
Hoover first requires us to consider whether Charles R. Lloyd has any other adequate means, other than a preemptive injunction, to obtain the desired relief, that being stopping Lloyd's, Inc. from disposing of its assets. If so, the circuit court's injunction is premature. One certain way that Charles R. Lloyd would have to correct the issue of a conveyance of Lloyd's, Inc.'s assets would be to file a complaint under the Act itself. That, of course, has yet to happen. Petitioners have therefore met the first component of Hoover.
Hoover next requires us to consider whether Charles R. Lloyd will be damaged or prejudiced in a way that is not correctable on appeal or through some other adequate means. Again, we find no basis to conclude that Charles R. Lloyd would be prejudiced absent for the entry of a preemptive injunction. The record simply does not provide any support, absent speculation, that such harm will occur. More specifically, the circuit court's order is devoid of any factual finding in this regard. Even if damage were to occur, there is no basis to conclude that it would not be correctable through the Act or some other adequate means. The second prong of Hoover is therefore met by Petitioners.
The third and most significant prong of the test is whether the lower tribunal's order is clearly erroneous as a matter of law. While the circuit court found that the motion of Charles R. Lloyd was not a formal complaint of a fraudulent transfer, it is apparent that the circuit court's ruling was couched in forestalling such a complaint. In other words, by issuing the injunction, the circuit court anticipated something which the facts available to the circuit court did not support. Therefore, the issue is whether there was a sufficient legal and factual basis for the granting of the injunction in light only of the creditor's fear that Lloyd's Inc. might attempt to thwart Charles R. Lloyd's collection *346 attempts. The record is simply devoid of any proof of a fraudulent transaction within the definition of the Uniform Fraudulent Transfers Act. We conclude that under the limited record before it, the circuit court's granting of Charles R. Lloyd's motion for injunctive relief was premature, especially in light of Charles R. Lloyd's statement that this motion was not intended to be a complaint under the Uniform Fraudulent Transfers Act. Issuance of an injunction below was clearly erroneous. Petitioners, therefore, have met the third and most important prong of Hoover.
The fourth and fifth components of Hoover involve whether the lower court's order is an often-repeated error or whether it manifests persistent disregard for either procedural or substantive law and whether the lower court's order raises new and important problems or issues of law of first impression. While our analysis of this case does not indicate that either such component is manifest, we do observe that the potential for harm to Petitioners of the circuit court's presumptive injunction in this case based on what amounts to an assumed anticipation by the circuit court that a fraudulent transfer might occur compels us to act. The granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ. Syl. pt. 4, State ex rel. Donley v. Baker, 112 W.Va. 263, 164 S.E. 154 (1932). Accord, Jefferson Cty. Bd. of Educ. v. Jefferson County Educ. Ass'n, 183 W.Va. 15, 393 S.E.2d 653 (1990); State ex rel. East End Assoc. v. McCoy, 198 W.Va. 458, 481 S.E.2d 764 (1996).
The appointment of a commissioner in aid of execution does not appear to be a point of contention between the parties. We see no harm in such an order. We therefore conclude that the circuit court acted within its discretion in appointing a commissioner in aid of execution and we decline to include provisions related to such order within this Writ of Prohibition.

IV. Conclusion
For the foregoing reasons, we issue the writ of prohibition prohibiting the Circuit Court of Braxton County from enjoining the transfer, dissipation and/or wasting of assets on the part of Lloyd's Inc. as contained in its order of March 27, 2009. This writ of prohibition does not extend to that portion of the order appointing a commissioner in aid of execution or that portion of the order relating to payment of fees and costs to the commissioner.
WRIT GRANTED AS MOULDED.
NOTES
[1] The Act is contained in West Virginia Code § 40-1A-1, et seq. This Act defines certain transactions as fraudulent as they relate to debtors and creditors. W. Va.Code § 40-1A-4 relates to fraudulent transfers in regard to present and future creditors, while § 40-1A-5 deals with only present creditors.
[2] West Virginia Code § 38-5-1 et seq. governs proceedings in aid of execution. These proceedings may include inquiry of the judgment debtor by the creditor or duly-appointed commissioner as to whether the debtor holds real estate or other assets that may be subject to execution.